*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TATIANA PROZHOGA,

        Plaintiff-Appellant,

v

DORIAN JACKSON,

        Defendant-Appellee.

UNPUBLISHED
February 1, 2024

No. 361910
Genesee Circuit Court
Family Division
LC No. 19-922654-DS

Before: REDFORD, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order awarding her physical custody of the parties' minor child, awarding the parties joint legal custody, and awarding defendant parenting time. Although it is clear that the trial court invested substantial care and attention into this case, its decision to award defendant joint legal custody was against the great weight of the evidence and failed to consider the child's custodial environment when awarding defendant parenting time. Therefore, we vacate the provisions of the order awarding defendant joint legal custody and parenting time and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant had one child together, who was born in September 2011. Plaintiff left the parties' home in September 2018, following an incident of domestic violence that occurred in the presence of the child. Afterwards, plaintiff allowed defendant to see the child only in public places, generally the child's sporting events. In August 2019, defendant filed a motion for custody and parenting time, seeking joint physical and legal custody, and equal parenting time.

The court referred the issues of child support, custody, and parenting time to a referee for an evidentiary hearing and entered an interim custody order giving plaintiff sole physical and legal custody, with parenting time "as the parties agree," until further order of the court. After a two-day evidentiary hearing and after interviewing the child, the referee issued a report recommending that plaintiff have sole physical and legal custody and that defendant have supervised parenting time "until he undergoes a psychological evaluation and completes extensive anger management

and parenting classes," after which he "may file to expand his parenting time." Defendant objected to the report and recommendation, specifically challenging many of the referee's factual findings.

As a result of defendant's objections, the trial court held a de novo hearing that lasted four days. After the hearing, the trial court issued a written opinion and final custody order, in which the court found that the child had an established custodial environment with plaintiff. With respect to the best-interest factors under MCL 722.23, the court found the parties equal on factors (a), (b), (c), (e), (f), (g), (h), and (j). The court found that factor (d) favored plaintiff because of the length of time the child had been residing primarily with her. The court stated that it interviewed the child and found that factor (i) favored plaintiff, but the court had concerns about "coaching." The court determined that factor (k) favored plaintiff but that domestic violence was not a current issue. The court also determined that factor (*l*) favored defendant. The court found by clear and convincing evidence that it was in the child's best interests to award the parties joint legal custody and that it was in the child's best interests for plaintiff to have primary physical custody. The court also awarded defendant parenting time every other week from Thursday after school until Monday morning, and overnight parenting time every other week on the weeks he does not have weekend parenting time. In addition, the court awarded the parties alternating weekly parenting time during the school summer recess, alternating parenting time on major holidays, and one-half of the Christmas and Easter/spring break school vacations. This appeal followed.

## II. STANDARDS OF REVIEW

With respect to issues involving child custody, " 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Yachcik v Yachcik*, 319 Mich App 24, 31; 900 NW2d 113 (2017), quoting MCL 722.28. We will not disturb the trial court's findings of fact "unless the facts clearly preponderate in the opposite direction." *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010). "Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion." *Brown v Brown*, 332 Mich App 1, 8; 955 NW2d 515 (2020). "In child custody cases specifically, an abuse of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic." *Id*. (quotation marks and citation omitted).

"This Court reviews the trial court's determination regarding a child's best interests for clear error." *Id*. at 8-9. Clear legal error occurs when the trial court "incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted). "This Court gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments." *Id*. at 9. Evidentiary rulings are reviewed for an abuse of discretion. *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 333 Mich App 457, 477; 960 NW2d 186 (2020). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. at 477-478 (quotation marks and citation omitted). Preliminary and underlying questions of law are reviewed de novo. *Id*. at 478. The trial court necessarily abuses its discretion when its determination is not legally correct. *Id*.

## III. MODIFICATION OF THE INTERIM ORDER

First, plaintiff argues that the trial court erred by modifying the parenting-time provision of the interim order issued pending the de novo hearing to address defendant's objections to the referee's report and recommended order. We disagree.

The de novo hearing is governed by MCR 3.215(F), under which the hearing "must be held within 21 days after the written objection is filed, unless the time is extended by the court for good cause." "To the extent allowed by law, the court may conduct the judicial hearing by review of the record of the referee hearing, but the court must allow the parties to present live evidence at the judicial hearing." MCR 3.215(F)(2). A trial court has the power to, "by an administrative order or by an order in the case, provide that the referee's recommended order will take effect on an interim basis pending a judicial hearing." MCR 3.215(G)(1).

A child-custody determination under the Child Custody Act, MCL 722.21 *et seq*., includes orders about physical custody and parenting time. MCL 722.1102(c). This case involves an initial custody determination and does not involve modification of a custody determination; consequently, plaintiff's reliance on authority governing modification of a parenting-time determination is misplaced. The March 2, 2021 order was an interim order pending a de novo hearing to resolve the issues of custody, parenting time, and child support, and defendant's objections to the referee's recommendation. There was nothing permanent about the trial court's order. The trial court undoubtedly had the authority to disregard the referee's recommendation, and nothing prohibited the court from modifying any aspects of the parenting-time provision. Indeed, the court stated at the hearing on defendant's objection to the referee's recommendation that it would review the issue of parenting time at a review hearing on April 6, 2020, to determine whether to enter a different interim order regarding parenting time.

The court recognized that the parties' child had the right to have parenting time with their parents in accord with the child's best interests. See MCL 722.27a(1) and (3). The court also presumably recognized the potential for delay of the de novo hearing because of the COVID-19 pandemic. The court regularly scheduled and provided notice of review hearings to review parenting time pending the de novo hearing. The court appointed a legal guardian ad litem ("GAL") to represent the child's interests, perform a full investigation, and give reports and recommendations to the Court "regarding disputes that may arise" on a number of issues, including parenting time and changes in parenting time. The record demonstrates that plaintiff clearly had notice that the issue of parenting time would be addressed at each review hearing pending the de novo hearing and that the GAL would make recommendations regarding parenting time. Plaintiff's argument that the review hearings deprived her of due process because she was unaware that the court would consider modifying parenting time at the review hearings is belied by the record, and the trial court did not err by modifying the parenting-time provisions of the interim order pending de novo review.[1]

---

[1] Moreover, even if the court erred by modifying the interim order, any error would not require reversal of the custody order because a de novo hearing was held. See, e.g., *Mann v Mann*, 190 Mich App 526, 533; 476 NW2d 439 (1991) ("Our conclusion that the trial court committed clear

## IV. LEGAL CUSTODY

"[T]he Child Custody Act draws a distinction between physical custody and legal custody . . . ." *Merecki v Merecki*, 336 Mich App 639, 647; 971 NW2d 659 (2021). "Thus, the Legislature divided the concept of custody into two categories—custody in the sense of the child residing with a parent and custody in the sense of a parent having decision-making authority regarding the welfare of the child." *In re AJR*, 496 Mich 346, 361; 852 NW2d 760 (2014), superseded in part by statute as stated in *In re AGD*, 327 Mich App 332, 342; 933 NW2d 751 (2019). "Physical custody pertains to where the child shall physically reside, whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare." *Merecki*, 336 Mich App at 647 n 3 (quotation marks and citation omitted).

### A. ESTABLISHED CUSTODIAL ENVIRONMENT

"Before making a custody determination, the trial court must determine whether the child has an established custodial environment with one or both parents." *Bofysil v Bofysil*, 332 Mich App 232, 242; 956 NW2d 544 (2020). Here, the trial court found that the child's established custodial environment was with plaintiff. MCL 722.27(1)(c) states that a trial court "shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." See also *Thompson v Thompson*, 261 Mich 353, 361; 683 NW2d 250 (2004) (stating that where an established custodial environment exists, the court is required to apply the clear and convincing evidence standard regardless of whether it is making an initial custody determination or modifying a previous custody order). Accordingly, the trial court was prohibited from issuing a new order changing the child's established custodial environment unless there was clear and convincing evidence that such a change was in the child's best interests. See MCL 722.27(1)(c); see also *Pierron v Pierron*, 486 Mich 81, 86; 782 NW2d 480 (2010) (explaining that a trial "court may not change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child") (quotation marks and citation omitted).

### B. CONDUCT OF TRIAL COURT

Initially, plaintiff argues that the trial court "prejudged" the facts before the de novo hearing. She contends that "as a matter of law the trial court could not have reached its conclusion regarding the 'mutual' conflict before the trial because the court did not have an evidentiary record during those two years." Therefore, she contends, the court must have been improperly acting on its "impressions" or "gut reactions." She maintains that the court's decision was "overwhelmed by its focus on conflict." She also argues that the court's findings regarding mutual conflict were against the great weight of the evidence because she contends that the "evidence showed that the conflict was primarily caused by [defendant]." The court had judicial notice of the entire lower court file. Further, the trial court presided over the proceedings in this case for more than two

---

legal error does not, however, compel us to reverse the court's final order changing custody, because a hearing de novo was eventually held.").

years and was fully aware of the disputes and conflicts between the parties. Indeed, throughout the proceedings, the court admonished both parties to put aside their differences and focus on the best interests of the child. Plaintiff's contention that the trial court had an "early jump to the conclusion that both parties were at fault for the conflict" is, therefore, not supported by the record.

## C. BEST-INTEREST FACTORS

Next, plaintiff argues that the trial court's findings regarding the best-interest factors, particularly factors (a), (b), (c), (e), (f), (g), (h), (j), and (*l*), were against the great weight of the evidence. With respect to the best-interest factors, the trial court's "findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties." *MacIntyre v MacIntyre*, 267 Mich App 449, 452; 705 NW2d 144 (2005). "A court need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). MCL 722.23 states:

> As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:
>
> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
>
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.
>
> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.
>
> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
>
> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> (f) The moral fitness of the parties involved.
>
> (g) The mental and physical health of the parties involved.
>
> (h) The home, school, and community record of the child.
>
> (i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.
>
> (j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and

the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

       (k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

       (*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

In connection with the best-interests considerations relevant in this case, joint legal custody under MCL 722.26a means that "the parents shall share decision-making authority as to the important decisions affecting the welfare of the child." "In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate with each other in joint decision-making." *Bofysil*, 332 Mich App at 249 (quotation marks and citation omitted). Under MCL 722.26a(1), when joint custody is considered, the trial court shall determine whether joint custody is in the best interests of the child by considering the best-interest factors in MCL 722.23 and "[w]hether the parents will be able to cooperate and generally agree concerning the important decisions affecting the welfare of the child." Joint legal custody may be appropriate even though the parties harbor personal animosity and have in the past had difficulty communicating if both parties demonstrate that their communications have recently improved. *Shulick v Richards*, 273 Mich App 320, 326-327; 729 NW2d 533 (2006).

In awarding joint legal custody, the trial court found that the parties were able to agree and communicate regarding the child's needs. The trial court recognized the longstanding conflicts between the parties but found that despite them, the parties were able to reach a consensus after the de novo hearing regarding allowing the child to attend a Muslim afterschool program despite defendant's decision to no longer practice the faith. However, as explained in more detail in relation to best-interest factor (*l*), this *one instance* of cooperation was insufficient to support a finding that the parties would be able to "cooperate and generally agree concerning the important decisions affecting the welfare of the child." See MCL 722.26a(1). The record shows that despite one instance of cooperation, which took place after significant involvement with the trial court, the parties were not able to generally cooperate, and the evidence heavily preponderates against the trial court's conclusion that the parties are capable of communicating and cooperating to make joint decisions regarding health care, religion, education, day-to-day decision-making, and discipline. See MCL 722.23; *Bofysil*, 332 Mich App at 249. The trial court, therefore, abused its discretion by awarding the parties joint legal custody.

## 1. FACTOR (A)

Factor (a) requires consideration of "[t]he love, affection, and other emotional ties existing between the parties involved and the child." MCL 722.23(a). The trial court found that both parties loved the child, "but the unending conflict between these two parties has always overshadowed the affection and emotional ties the child either has or is allowed to have with the father." While the testimony showed that both parents love the child and show him affection, the

testimony clearly showed that the child had a greater emotional bond with plaintiff. The evidence also demonstrated that defendant would bully, tease, and physically intimidate the child, and the GAL testified she never saw any physical interaction between the two. The trial court's finding that the parties were equal on factor (a) was clearly against the great weight of the evidence.

## 2. FACTOR (B)

Factor (b) requires consideration of "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed." MCL 722.23(b). The trial court found this factor weighed equally. The trial court found that despite the conflict between the parties, they both have deep love and affection for the child and that "they are both very capable parents, and even better since they have ended their relationship." The trial court's findings focused only on love and affection. The evidence presented also showed that plaintiff had primary involvement with the child's education, religious training, and extracurricular activities, and that there was a reasonable likelihood that plaintiff would continue to guide, educate, and nurture the child in the future. While the record showed that defendant was not involved in the child's education or religious upbringing in the past, he was involved in the child's sporting events. Moreover, plaintiff acknowledges that defendant participated in some extracurricular activities, took the child to some sporting events, and began participating in school activities. The trial court's determination that factor (b) weighed equally was, therefore, not against the great weight of the evidence.

## 3. FACTOR (C)

Factor (c) relates to "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). This factor is "intended to evaluate the parties' capacity and disposition to provide for the children's material and medical needs," and looks to the future. *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008). The trial court found that this factor weighed equally, observing that the parties were employed and were capable of meeting the child's needs.

However, at the time of the de novo hearing, defendant was $2,132 in arrears in child support and had only agreed to pay previous arrearages because he was going to be arrested. But this merely establishes that he had the *capacity*, not necessarily the *disposition,* to support the child. In contrast to defendant, plaintiff paid for all of the child's numerous extracurricular activities, except hockey, for which defendant paid one-half of the expenses. Plaintiff obtained health insurance for the child and took him to medical appointments. Plaintiff also obtained housing near the child's school. The evidence clearly demonstrates that factor (c) weighed in favor of plaintiff. Accordingly, the trial court's decision was against the great weight of the evidence.

## 4. FACTOR (E)

Factor (e) considers the "permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). This factor considers the home's permanence, not its acceptability or stability. See *Kuebler v Kuebler*, ___ Mich App ___; ___ NW2d ___ (2023)

(Docket No. 362488), slip op at 24 (stating the trial court erred when it considered the acceptability of the children's bedrooms under factor (e) because such consideration did not concern the home's permanence). Considerations such as stability are not part of the analysis under factor (e) because the "stability, health, or safety of the environment provided by a party is considered in other factors." *Brown*, 332 Mich App at 21. The trial court found the parties equal on this factor, stating that plaintiff resided in a home with the child, that she was in a relationship with a man who lived out of state, and that the man was involved in the child's life. The court found that defendant shared a home with his girlfriend and her minor child and that the girlfriend was involved in the child's life.

Plaintiff argues that the trial court failed to recognize that her custodial environment consisted only of her and the child, whereas defendant has formed a new family custodial environment "in circumstances that have no indicia of stability, in that [defendant] has quickly moved the child to an environment with a new 'family,' but without a marriage or other indicia of stability." However, factor (e) does not address the stability of the home, but rather its permanence, *Brown*, 332 Mich App at 21, and at the time of the de novo hearing, defendant and his girlfriend had been in a relationship and living together for more than two years. Plaintiff confuses permanence with stability and has presented no evidence defendant's home lacked permanence and has not demonstrated the trial court's conclusion that factor (e) weighed equally was against the great weight of the evidence.

## 5. FACTOR (F)

Factor (f) relates to the "moral fitness of the parties involved," MCL 722.23(f), and more specifically the parties' moral fitness as parents. *Fletcher v Fletcher*, 447 Mich 871, 887; 526 NW2d 889 (1994) ("[T]he question under factor f is *not* 'who is the morally superior adult;' the question concerns the parties' relative fitness to provide for their child, given the moral disposition of each party as demonstrated by individual conduct."). The court found the parties equal on this factor. The court noted that the factor "is also dominated by the constant conflict between the parties." The court questioned "the moral fitness of both parties who have mutually created a level of animosity that is completely irrational and also completely unnecessary." The court did "not find either party morally unfit, other than the conflict they create."

Contrary to plaintiff's argument, evidence that defendant lied and was dishonest when dealing with third parties is not relevant where there was no evidence that it affected his parenting ability. See *id.* at 886-887 ("[Q]uestionable conduct is relevant to factor f only if it is a type of conduct that necessarily has a significant influence on how one will function *as a parent*."). For example, in *Fletcher*, the defendant's extramarital affairs were not relevant to how the defendant functioned as a parent and were, therefore, not relevant to the court's analysis under factor (f), especially where it was shown that the children had no knowledge of the affairs. *Id.* Similarly here, even if plaintiff established that defendant was dishonest in his dealing with third parties, there was no evidence that defendant's conduct impacted his parenting ability or that the child had any knowledge of it. Likewise, plaintiff has not presented any factual support for her contention that defendant attempts to "encourage" the child to lie and actually bullies the child into lying. In sum, plaintiff has not shown that the trial court's findings were against the great weight of the evidence with respect to factor (f).

-8-

## 6. FACTOR (G)

Factor (g) concerns the "mental and physical health of the parties involved." MCL 722.23(g). The trial court found the parties equal on this factor. The court found that "[t]here have been many public displays of hostility by both parties that are concerning to this Court. There has been prior involvement of [CPS] and a substantiated risk to the child. The parties were provided resources and the case was closed." The court also found that the parties did not have any limiting physical health issues.

Plaintiff argues that the evidence showed that defendant has "mental health problems, as evidenced by the orders requiring [defendant] to attend extensive anger management and parenting classes and to obtain a psychological evaluation." However, such orders, standing alone, are not evidence of a mental health issue. Further, the record is replete with examples of both parties acting improperly, as noted by the court when it addressed the hostility between the parties. Thus, plaintiff has not shown that the trial court clearly erred by finding that factor (g) was equal.

Plaintiff also raises an evidentiary issue in the context of factor (g), arguing that the trial court abused its discretion by allowing testimony about defendant's mental health after denying plaintiff's request that she be allowed discovery of the underlying data related to defendant's psychological evaluation. Plaintiff's argument is based on the GAL's testimony that, after reading the report from defendant's psychological evaluation, the GAL did not have concerns about his mental health. The GAL did not testify about the contents of the psychological evaluation, and the trial court sustained plaintiff's objection to defense counsel questioning the GAL about the contents of the report. The trial court did not refer to the GAL's testimony when makings its findings. Therefore, even if the court erred by allowing the GAL's testimony, any error in the admission of the evidence was harmless. See MCR 2.613(A).

## 7. FACTOR (H)

Factor (h) involves the "home, school, and community record of the child." MCL 722.23(h). Typically, trial courts will examine the degree and type of involvement of each of the parties in these aspects of the child's life. See *Diaz v Davey*, 307 Mich App 366, 394; 861 NW2d 323 (2014) (stating that the factor favored the defendant-mother where the plaintiff was "not as 'active' in the children's preschool and he did not frequently attend parent-teacher conferences."); *Dailey v Kloenhamer*, 291 Mich App 660, 668; 811 NW2d 501 (2011) (stating in the context of factor (h) that the "plaintiff had not enrolled the child in summer enrichment programs, nor had she met with the child's teachers to discuss her concerns. In contrast, defendant had enrolled the child in robotics classes, computer animation classes, and other extracurricular activities."). The trial court concluded that factor (h) weighed equally because the child was doing well academically and was involved in athletics at the direction of the parties. Plaintiff contends that the trial court should have found that factor (h) favored her because she was the parent who "consistently followed and promoted [the child's] day-to-day academics and enrichment." While the evidence revealed that in the past plaintiff was the parent who was most heavily involved in the child's education and extracurricular activities, the evidence showed that defendant was actively involved in the child's sporting activities. And plaintiff acknowledges that defendant became more involved in the child's education and in his school and extracurricular activities after initiating the custody

dispute. The record is clear that the child is thriving academically in school and is very involved in sporting activities. The trial court's finding that the parties were equal on this factor was not against the great weight of the evidence.

## 8. FACTOR (J)

Factor (j) requires consideration of "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). In finding the evidence weighed equally on this factor, the court reasoned:

> *This factor is the key to this case*. The parties have mutually created a conflict between themselves that should not work to the benefit of one party or to the detriment of the other party. The parties lived together as a family unit for the first eight years of the child's life, and this Court is convinced that in spite of the conflict, the Court is not concerned that either parent is incapable of being an appropriate parent. In fact, this Court finds that both parties are very capable and loving parents to the child. [Emphasis added.]

Plaintiff argues that the trial court's finding was on factor (j) was clearly erroneous and that the court should have found that factor (j) favored her. She asserts that the evidence showed that defendant created the conflicts, but abundant evidence was presented to support the trial court's finding that both parties were responsible for constant conflicts. Throughout the proceedings neither party demonstrated a willingness to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent. The trial court's finding that the parties were equal on this factor was, therefore, not against the great weight of the evidence.

## B. FACTOR (L)

Factor (*l*) allows the trial court to consider "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(*l*). The court found that this factor favored defendant and favored an award of joint legal custody. The court found that the constant conflict between the parties should not benefit only plaintiff by an award of sole legal custody to one parent. The court expressed concern that an award of sole legal custody would result in a change in domicile because plaintiff had a significant other in another state and "moving the child away from an appropriate and very involved father would not be in the child's best interest." The court noted that after the de novo hearing, defendant consented to plaintiff's request that the child attend an afterschool Muslim school program even though he was no longer a practicing Muslim, which demonstrated to the court that, in spite of conflict, the parties could reach consent on a religious issue "that is contemplated in a joint legal custodial environment." The court found that a strong bond existed between the child and defendant and that "testimony that the child has conflict in his relationship with his Father centers almost entirely upon issues of conflict between the parties. That conflict, which is in part the responsibility of the Mother as well, should not work to the detriment of just the Father."

-10-

Plaintiff asserts that it was speculative and erroneous for the court to find that plaintiff might attempt to file a change of domicile to Maryland if she were awarded sole legal custody. We agree. While evidence was presented that plaintiff's boyfriend lived in Maryland and that she took vacations with the child to visit him, no evidence was presented that plaintiff was contemplating moving. There was no evidence, other than speculation, to support the trial court's findings that plaintiff may someday want to relocate to Maryland. The trial court, therefore, clearly erred by finding that plaintiff's hypothetical and speculative move to Maryland was relevant to factor (*l*).

The trial court also found that factor (*l*) favored defendant because after the de novo hearing, he consented to plaintiff's request that the child attend an afterschool Muslim program even though defendant was no longer a practicing Muslim. While this may be a consideration in whether to grant joint legal custody, the court's reliance on this as ground for weighing factor (*l*) in favor of defendant was erroneous. On this basis of this one incident, and in spite of substantial evidence that the parties could not agree and communicate regarding the child's needs, the court found that it was in the best interests of the child that the parties share joint legal custody. The countervailing evidence included the child's counselor's testimony that the parents lacked the ability to cooperate and that she would not recommend joint custody, the GAL's testimony that she would not recommend joint custody, and plaintiff's testimony that the parties quarreled over everything. The fact that the parties agreed on one matter after the de novo hearing was not sufficient to award defendant joint legal custody, and the trial court's finding that factor (*l*) favored defendant was against the great weight of the evidence. Accordingly, we vacate the portion of the trial court's order granting the parties joint legal custody and remand for further proceedings consistent with this opinion.

## V. PARENTING TIME

Next, plaintiff argues that the trial court applied an incorrect burden of proof and improperly shifted to her the burden of proof regarding parenting time. The trial court framed the issue as one in which plaintiff was requesting that defendant's parenting time be suspended or supervised and that plaintiff must show that this change is in the best interest of the child by a preponderance of the evidence. As we previously noted, however, this case involves an initial custody and parenting-time determination. Therefore, MCL 722.27(1)(c) applies and provides that a trial court "may not . . . issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). The trial court failed to consider whether the parenting-time order would modify the child's existing custodial environment with plaintiff. If the order amounted to a change in the established custodial environment, the burden would be on defendant, not plaintiff, to show by clear and convincing evidence that the parenting-time order—and change in established custodial environment—would be in the best interests of the child. See *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003) ("The movant, of course, has the burden of proving by a preponderance of the evidence that either proper cause or a change of circumstances exists before the trial court can consider whether an established custodial environment exists (thus establishing the burden of proof) and conduct a review of the best interest factors."). The trial court did not make the relevant best-interest findings when makings its parenting-time determination. We therefore vacate that portion of the June 6, 2022 order affecting parenting time

and remand for further proceedings. On remand, the trial court will be required to "consider up-to-date information in making its parenting-time determination." *Fletche*r, 447 Mich at 889.

## VI. PROCEEDINGS ON REMAND

Lastly, plaintiff argues that the case should be assigned to a different judge on remand because the trial judge has "a settled disposition regarding the cause of the conflict between the parties" and that it would therefore be impossible for the judge to fairly address the issues before it. "The general concern when deciding whether to remand to a different trial judge is whether the appearance of justice will be better served if another judge presides over the case." *Sparks v Sparks*, 440 Mich 141, 163; 485 NW2d 893 (1992). This Court "may remand to a different judge if the original judge would have difficulty in putting aside previously expressed views or findings, if reassignment is advisable to preserve the appearance of justice, and if reassignment will not entail excessive waste or duplication." *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004). A party challenging the impartiality of a judge must overcome a heavy presumption of judicial impartiality. *Van Buren Twp v Garter Belt, Inc*, 258 Mich App 594, 598; 673 NW2d 111 (2003). "In general, the challenger must prove a judge harbors actual bias or prejudice for or against a party or attorney that is both personal and extrajudicial." *Id*.

Here, the trial court found that both parties were responsible for the conflicts between them. The court's comments regarding conflict were genuine and nonprejudicial and do not suggest that the trial judge would be unable to fairly adjudicate the case if this case were remanded to the same trial judge. This Court's review of the record shows that the trial court invested significant time, care, and attention into this case, despite our finding of reversible error. Plaintiff has failed to overcome the burden to show that the trial judge harbors actual bias or prejudice for or against either party.

The trial court's order awarding defendant joint legal custody and parenting time is vacated and the case is remanded for further proceedings consistent with this opinion. Upon remand, the trial court shall reexamine the issue of legal custody, allowing the parties to update the record to account for any recent developments. The trial court shall further reconsider parenting time, if applicable per the court's legal custody order. We do not retain jurisdiction. Neither party having prevailed in full, no costs are awarded. MCR 7.219 (A).

/s/ James Robert Redford
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick

-12-